154196 Terry Stimmel v. Jefferson B Sessions III, et al. Arguments not to exceed 15 minutes per side. Mr. DeBrasse, for appellant. Good afternoon. Good afternoon, Your Honors. May it please the Court, my name is Derek DeBrasse. I'm an attorney with the law firm of Barney DeBrasse, LLC, based out of Columbus, Ohio. Can you keep your voice up? Yes, Your Honor. I apologize. I am here proudly representing my client, Terry Stimmel, who is currently seated in the courtroom today with his wife. I would like to reserve two minutes for rebuttal. Very well. The issues, Your Honors, in this case can best be summed up with a quote from Justice Clarence Thomas in the U.S. v. Boise case, where he stated, Can you give me another area where a misdemeanor violation suspends a constitutional right? That's what we're dealing with here today. Mr. Stimmel, in 1997, was convicted of a misdemeanor crime of domestic violence. Since then, his constitutional right to keep and bear arms has been suspended, with no relief available to him. This Court, through its jurisprudence, has analyzed Second Amendment challenges through a two-step process. Before you move on, can you cite to me any court anywhere that has held that 922 G9 is unconstitutional as a violation of the Second Amendment? I cannot, Your Honor. Not a single court? Not a single court, Your Honor, but it has not been decided in this jurisdiction. How many other circuits have ruled to the contrary, that it is not constitutional? I don't know the exact number, but there is many courts. I will tell you, for instance... Isn't that significant, that no one's adopted your argument? I do believe it is significant, Your Honor. I do believe it's significant. However, we also have an as-applied challenge. And as to Mr. Stimmel, this is a man who was convicted 20 years ago. He's a Navy Vietnam veteran who has had no other convictions since. Now, is your applied challenge that much different from any of these other cases that have held that the provision does not violate the Second Amendment? And if so, how is your applied challenge that different from the other cases? Some of those cases, yes, Your Honor. Some of those cases, some of those defendants were convicted of more serious offenses. They were caught with firearms later on. They were not while abiding after the conviction. My client has had no other substantial convictions since 1997. At least one of them was a recidivist at the time he brought the second challenge. Yes, Your Honor. I apologize. I can't cite to the specific case at this moment, but I do believe so. I'm losing the end of your sentences, so could you please... I apologize, Your Honor. Thank you. So this court observes the Second Amendment under a two-step process in U.S. v. Greeno. The first step is a historical analysis. And I think I would be remiss if I didn't focus on this because this is where the district court really erred. They entered into zero historical analysis. Now, that's binding on the district court to enter into that analysis. They mention it in passing, but they enter into zero historical analysis. It is clear from other jurisdictions that the Second Amendment does meet the first prong of the Greeno analysis. For instance, in United States v. Chester, the court held that the activity regulated under a disability for misdemeanor crime and domestic violence does fall under the purview of the Second Amendment as historically understood. The government agreed with that position in the Fourth Circuit. It wasn't until later on in U.S. v. Staten that it decided to change its mind and make a different argument, a contrary argument. However, again, the circuit court upheld that the activity regulated by 18 U.S.C. 922 G-9 is activity that fell under the historical purview of the Second Amendment at the time of its ratification in the late 1700s. With that in mind, what we have here is a law that didn't exist or didn't create a disability at the time of ratification. Misdemeanor crimes and domestic violence, any misdemeanor in fact, didn't render a disability at the time of ratification. It wasn't until in my lifetime and as a young attorney that's not that long ago, 1996, with the Lautenberg Amendment, that we see a misdemeanor violation lead to a deprivation of a civil liberty found in the Bill of Rights. And that's a very large hurdle. At the time of the ratification, was the misdemeanor felony distinction anything like it is today? In other words, were people really thinking in the kind of terms that we have in our statutes? I would argue yes, Your Honor. If the state of Ohio believed Mr. Stemmel convicted a serious crime as the finding father saw it, they would have charged him with a felony. They didn't do that. The government would argue that a misdemeanor equates to the same level as a misdemeanor with regards to a firearms restriction, but it just does not. It's a misdemeanor for a reason. If Mr. Stemmel had attacked his wife to such a serious manner that it should render a firearm disability, he would have been charged with something more serious. Isn't it frequently, I'm not sure which way this cuts, but a lot of times that distinction is just a matter of pleading down, of prosecutorial discretion, of matters of proof. We see in the papers cases of people pleading down crime so people won't be deported. Do we have that same kind of distinction, or is it the distinction is there and we ought to stand by it? That does occur, Your Honor, a few things. One, and the inverse, we have people like my client who would take a plea deal because either A, they can't afford counsel, or B, they're just under the stress of a divorce, and it leads to a fight where they don't want to fight a domestic violence conviction. In Ohio, what is the distinction between felonies and misdemeanors? Are misdemeanors limited to jail time in the county jail of one year or less, or what distinguishes misdemeanors from felonies in Ohio? Yes, Your Honor, thank you. A few things. One, as Your Honor indicated, you can do a maximum amount of time of six months, not even close to that. Six months is the misdemeanor maximum in Ohio? It's the maximum in the state of Ohio. In Michigan, we have two-year misdemeanors. State of Ohio, it's six months. State by state, the distinction changes and is often blurred. It used to be you had different rights if you were charged with a misdemeanor as to a felony, but most of those have been eliminated as well. So, I mean, the distinction, all right, six months in a county jail. Yes, Your Honor, and the right issue actually is still existing in Ohio. For what? Well, Mr. Stimmel never lost his right to hold office, serve in a jury, or vote. Okay. Which actually ties into the ability to actually have his rights restored. Because he never loses his three core rights under United States v. Karen out of this jurisdiction, he can't have them restored. He has to lose those three core rights, and he never has. Felons lose those rights. Now, in the state of Ohio, those are automatically restored to you for felons. In most states, that's not the case. But getting back to your original question, Your Honor, one is there's a maximum amount of jail time of six months, and that's in jail, not prison. Two, the elements are different. For instance, domestic violence can elevate to a felony if the woman is pregnant. It does become a felony of the fifth degree. What's interesting about this, under the law, it's got to be defined as a misdemeanor. And if you look at the G-1 disability, you have to be punishable by more than a year in prison. If I were to commit domestic violence against a pregnant woman and they convict me of that F-5, it's only punishable by exactly 365 days. It doesn't invoke the G-9 disability, and it does not invoke the G-1 disability. There's this weird gray area, this absurdity in the law, where if Mr. Stimel had committed a more egregious crime, he would never have lost his gun rights. And the statute you just read about punishable by a year, would that mean that what Michigan calls a two-year misdemeanor would be a federal felony? No, Your Honor. Under federal law, 18 U.S.C. 921-820, a felony is defined as any crime that is punishable by more than one year or more than five years for a misdemeanor. So Michigan's two-year would not qualify either. Okay, thank you. But in Ohio, because it's an F-5, it doesn't exceed one year. So we have a felony domestic violence conviction where people in the state of Ohio could actually and do actually retain their federal gun rights. And that seems to be an absurdity in the law to me. We have a gentleman here. The core of this case is very simple. Mr. Stimel is a Vietnam veteran. He was convicted in 1997. He had top-secret security clearance when he served in the military. He got into a scuffle with his wife. They are now divorced, but they maintain a cordial relationship. And he can never get out from underneath that disability, ever. He can't apply for an expungement because it doesn't exist in the state of Ohio for him. He cannot get a restoration of rights because he has not lost his three core rights. And there is no manifest injustice, so he cannot get a set-aside. The only avenue he really has is a theoretical avenue, and that's a pardon. It's a theoretical opportunity to get his rights back, but it's a practical impossibility. Would he also have the ability under the federal programs that are not funded? In other words, there are parts of the gun law that allow the Attorney General or states to restore rights under certain characteristics, but they either are not funded federally or not enacted state. Am I right about that? Yes, Your Honor. So the way restoration works is the federal government has a process in place under 18 U.S.C. 925C, but it's not funded. I believe there's a U.S. Supreme Court case on this that upholds the constitutionality of U.S.V. Bean. So then the state will look to the jurisdiction where the proceedings arose. The federal government will, and that's Ohio. So Ohio has to restore those rights, but because the rights were never lost, the right to hold office, serve in a jury, and vote, they cannot be restored. It also says that you can get an expungement. We have sealing the record in the state of Ohio, not expungement. Expungement only exists in very rare circumstances for victims of sex offense or sex trafficking that committed a crime during the sex trafficking and for juveniles, neither of which apply to my client. And pardon, although a theoretical potential is not a practical potential. In 2015, Governor Kasich granted two out of 244. That's less than 1%. And to say that we have a fundamental individual right of Mr. Stimmel that's going to be put in the hands of a politically elected official who doesn't have to grant any of these to me just reeks of unconstitutionality. Going back to the as-applied nature of the challenge, did the district court rule on that individually, or did he just say that since it's constitutional, you don't get an as-applied challenge? Yes, Your Honor. So the district court mentioned the Greeno analysis and then went right into a scrutiny discussion, applying intermediate scrutiny but never actually applying the historical analysis. But for any other reason, this court remains this case. It has to be on that. But does it have to? I mean, your client can prevail on the historical analysis, but you still go to the second step in Greeno. Yes, Your Honor. And if it's substantially related to a compelling state interest, you lose, right? Well, Your Honor, we would argue that strict scrutiny actually applies. Okay. I mean, what I'm saying is even if you win the first step of Greeno, it doesn't mean you necessarily win the analysis, right? That is correct, Your Honor. So the fact that the district judge did not thoroughly apply the historical analysis, why wouldn't that be harmless error since you don't necessarily win anyway? Well, this court has made it very clear in the jurisprudence under U.S. v. Greeno that it has to be applied, and this district court has never ruled otherwise. I don't believe it's harmless error. The district court has defined that, in fact, the MCDV disability affects activity that is regulated under the Second Amendment, and that is what exists here. Greeno exists for a reason. The two-step process exists for a reason. We would also argue that. If we take your side of the two-step process, it's protected by the Second Amendment generally, but then our court has said intermediate scrutiny. So then we say narrowly tailored. Can we say generically it's narrowly tailored, but as applied to this gentleman, he would be outside of that narrow tailoring? Did the court rule on that kind of argument? I don't believe they did, Your Honor. I would first argue that on its face it's unconstitutional, but if the court finds otherwise, I do believe 100% that as applied to Mr. Stimmel, given the facts of Mr. Stimmel's life and career, it is absolutely unconstitutional as applied to him. What's so unusual about his case, that he hasn't had another conviction since 1997? He hasn't had another conviction. He's a law-abiding citizen. Well, that's what you expect people to do. I mean, that's not extraordinary. That's the norm, isn't it? Absolutely, Your Honor. So what's unusual about it? Well, that's a good point. It's not unusual. That's why it's overly broad, and we would argue that it fails the scrutiny analysis. Is Congress free to make an assessment that domestic violence is a different type of misdemeanor,  and that there are circumstances surrounding such charges that put pressure to have a misdemeanor conviction? I believe that's the argument the government would make, but what they are trying and attempting to do is fit everybody that has ever been convicted of that crime under that same umbrella, and I believe it's overly broad, and therefore it fails the scrutiny analysis, either under strict or intermediate. I'm out of time, Your Honors. You reserved how many minutes? Two minutes, Your Honor. All right. You'll have your two minutes. Any further questions at this time? Judge Boggs? Judge White? Thank you, Your Honor. All right. Thank you. Good afternoon. Good afternoon. Thank you, Your Honors. Patrick Nomaroff on behalf of the government. Plaintiff is prohibited from possessing firearms by Section 922G9 because he was convicted of knowingly assaulting his wife. That prohibition is consistent with the Second Amendment, which has historically been understood as being limited in the case of conviction. Domestic assault is a violent crime, and it's one that is closely connected with guns. There are hundreds of thousands of incidents of domestic violence each year and thousands of domestic homicides, and the majority of those domestic homicides involve the use of a firearm. Are you addressing yourself to the compelling state interest or to the historic? I think the nature of domestic violence is relevant to both inquiries. So at the first step of the Greeno test, the court, of course, looks to the historical understanding of the Second Amendment, and the right has historically been understood as being subject to forfeiture for conviction of a serious crime. Domestic violence certainly qualifies. So if that's the basis, can Congress take any other serious crime, misdemeanor violence, bank fraud, drug crimes? I mean, if we focus on responsible law-abiding citizen, which is a phrase the Supreme Court has used, does that not mean that Congress could take away gun rights for any conviction of any crime? I don't think so. It's not that sort of an argument. I mean, I think the question, of course, would be whether it's a serious crime. Now, in 922G1, we have the limitation based on felonies, and just not that it's relevant to this case, but just to correct one minor misstatement of my opposing counsel, that statute encompasses misdemeanors subject to more than two years' imprisonment, just to be clear on that, but not that it's relevant. Now, when Congress enacted 922G9, it's because it recognized that there was a dangerous loophole in 922G1 because domestic assault, while very serious, often results in a conviction for a misdemeanor for reasons unique to domestic violence. From a constitutional point of view, aren't there many serious crimes that are misdemeanors? I mean, you can beat up people, and as long as you're only charged with a misdemeanor, you can bribe jurors, you can bring in kilos of cocaine, and for whatever reason, you're only charged with a misdemeanor. That is, how much of your argument is factually based, that for some reason domestic violence is differently worse than any other sort, and you would have to go charge by charge by charge if Congress extended it? Well, first of all, there certainly are misdemeanors that are extremely serious, and the Supreme Court recognized in Tennessee v. Gardner that there are a number of misdemeanors that are more serious than felonies. 922G1. In fact, that's why they generally don't let you shoot misdemeanors, but you sometimes can shoot felons. Well, and 922G1 does capture some misdemeanors. Now, in arguing that domestic violence would result in historic loss of Second Amendment rights, that's not the same as arguing that Congress can identify any crime and attach disarmament to that crime. Any crime, I mean, all crimes are either felonies or misdemeanors, aren't they? But the label of misdemeanor or felony is not the only relevant distinction. Here we have a violent crime. We have one that is closely associated. Well, the violence is as defined because given the Supreme Castleman, Voisin Hayes, any battery touching is physical force and therefore fits under the statute, right? That's right, but a couple of points. First of all, in Voisin, of course, there was a constitutional question or a constitutional avoidance argument made that the Supreme Court rejected. Secondly- It was made by Justice Thomas. They really didn't focus on it, did they? Well, it was the petitioner actually included as one of the- Okay, but I didn't see them really say, okay, we can pass on that. I mean, that's- I mean, this is- You remember Vosburg v. Putney from law school, right? You kick the kid in the knee. That's physical force, right? Well, a couple of points. First of all, the reason Congress identified domestic violence for this prohibition is because the difficulties incumbent in prosecuting this crime often result in it being convicted as a misdemeanor rather than a felony, and that's because victims of domestic violence so often refuse to cooperate in the prosecution. Now, given that, I think it's appropriately treated as seriously as felonies, and the statistic to back that up is that 90% of victims in domestic violence cases were injured. The Supreme Court has recognized that domestic violence often escalates over time, especially if there's a firearm involved. So all that- Do any of those- As I read all of those data, they seem to say this is bad stuff. I didn't see on the face of them, for example, that recidivism was greater than for ordinary violence misdemeanors. People who beat up people in bar fights tend to beat up other people in bar fights. If you have a gun afterwards, you're likely to shoot somebody. In other words, I didn't see any data that said on any of those measures this is worse than a non-domestic violence. Is there a particular one you'd point to that would disabuse me of that? I don't have a study to point to for general misdemeanors, but I think that the study is indicating that the recidivism rate is somewhere between 35% and 80%. Do you conclusively demonstrate that the recidivism rate is particularly high? I'd be very surprised if there is some- Wait a minute, because you just added the word particularly. For general recidivism from crime, I usually think of it as 30%, 40%, 50%. The reason I'm pressing that is there are two ways of looking at this. One is Supreme Court says law-abiding people, these are crimes, they're not law-abiding. The other is to try to protect this by saying, well, some way domestic violence is different or worse than other kinds of crimes. That's why I thought you just said, I don't have a study that compares it to other kinds of recidivism. If the court would like supplemental briefing on that- Well, no, I did not find it in that, and so I'm trying to make a distinction between the two. There's a reason, and of course it's not dispositive, but I think there is a reason that Congress targeted domestic violence in 922 G9, and that is because it's a crime that I think in Congress's judgment often should be treated as a felony. It is equivalent in seriousness to a felony, but because of the difficulties incumbent in prosecuting it results in misdemeanor convictions. So in holding, if the court holds that an individual convicted of domestic violence permanently loses their Second Amendment rights at the first step of the Greeno test- The narrow tailoring is that Congress has decided that this kind of crime is as bad as a felony. Well, I was addressing the first step of the Greeno test. I'm also happy to address the intermediate scrutiny- I guess I find it hard to fit this into historical context. I mean, most of the scholarship is that it's been bad that we haven't treated domestic violence seriously. So at the time of the founding, it's unlikely that they thought that domestic misdemeanors were somehow similar to felonies. Well, this court in Greeno squarely rejected the sort of analysis that looks at whether the underlying conduct was criminal at the time of the founding. There, the statute at issue was a sentence enhancement for possessing a firearm in the course of a drug violation, and the court recognized that drug laws were not around at the time of the founding. The first federal drug law was in 1970, and yet it held that that law was consistent with the historical understanding of the Second Amendment right as not extending to the possession of firearms in the course of illegal conduct. Similarly, the historical understanding here is that the Second Amendment right has been subject to forfeiture on conviction of a serious crime. Now, we're not arguing that all misdemeanors can be deemed serious. What we're arguing is that domestic violence is a particularly serious crime. That Congress identified it because while it's equivalent in seriousness to felonies, it's often not prosecuted and often does not result in felony convictions. Now, if the court were not persuaded at the first step, the law certainly satisfies intermediate scrutiny, which is what this court adopted in Tyler for all of the reasons that we've discussed and for all of the reasons that numerous courts of appeals have found. And I did want to address one discussion that occurred during my opposing counsel's argument, which was whether there would then be sort of a third step involving the individual plaintiff's characteristics. And just to be clear, this court in Tyler squarely rejected any idea that the Second Amendment entitles plaintiffs to that sort of individualized determination of dangerousness. I mean, what we call an as-applied challenge in this circumstance just doesn't exist, right? I mean, how could there, if it's not individual, how could you make an as-applied challenge? Well, I think what the court held in Tyler is that if you're bringing an as-applied challenge, it's still subject to intermediate scrutiny, and the question is whether the law is a reasonable fit to the important objective being served. Now, if what you might put... But if it's a reasonable fit generally, then there can't be an individual challenge. If that's what you mean by an as-applied challenge, then I agree with you, Your Honor. That's what the court held, and that's in... I understand. I'm just saying that it's not that he doesn't fit into some actual category of as-applied. What we normally think of as as-applied doesn't exist under your scenarios. And that's what this court held in Tyler. And what if there's evidence that while there's a certain group of domestic violence offenders who will repeat predictably, there's another very substantial group who are one-time offenders who have no more relationship with the person and who almost never repeat? That sort of evidence, I think, would be relevant under this court's intermediate scrutiny analysis, but the plaintiff has not come forward with anything remotely resembling that sort of evidence here. And indeed, the statistics overwhelmingly suggest that there's a high recidivism rate and that it's difficult, if not impossible, to predict among who the recidivism will occur. And that's why courts have uniformly upheld the statute under intermediate scrutiny. And what do you do with a situation where, because of the individual state's laws, there's no way to get out from under it where in other places you would be able to? Well, a number of courts have dealt with that in upholding the law. And what the Seventh Circuit said, for example, is that, of course, when the prohibition is tied to the state criminal law, which is an entirely reasonable thing for Congress to do, there's going to be variability amongst the states. But that variability doesn't undermine the law. And here, Congress, you know, the Ninth Circuit also addressed it and said, Congress permissibly can enact a prophylactic measure given the risk that's imposed. And, you know, individuals may have varying degrees of ability to get the right back, but that doesn't undermine the law. And just to be clear, I think it's useful to point out that what Congress did was it defined what it means to be a domestic violent misdemeanor. And what it means is to have been convicted of the crime and for that crime not to have been pardoned or expunged or to have your civil rights restored. And that's consistent with, I think, a lot of the analysis in Tyler, where, you know, Judge Sutton, for example, talks about the difference between once you're convicted of a crime, you are convicted of that crime until it's been pardoned. And that's different, the court found, from mental illness and involuntary commitment. So Congress's definition tracks that understanding of what it means to be convicted of a crime, and it's reasonable in that sense. Let me take you back for one minute. I think your adversary started out with something about Justice Thomas. And if you listen to the oral argument where Justice Thomas actually asked the question, and he says, can you give me other examples of where a constitutional right is taken away because of a misdemeanor conviction? And I think if you listen to it, you'll see there's not a good answer given. How broad is the principle? If I'm convicted of perjury, can Congress then prevent me from testifying in my own behalf? Or if I'm convicted of bribing witnesses, can I be prevented from calling witnesses in my defense at the next trial? Well, I mean, if we're talking about the first step of the analysis here, we're looking at the historical understanding of the Second Amendment. This argument is pretty much at the second step, I think. That is, when Congress, you know, if we pass the first test, and obviously each of you were giving hypotheticals, we pass the first test and Congress says, okay, how good is the fit? The question is, that fit to take away a right, okay? I mean, if you pick your example of someone who's a great con man and is a misdemeanor perjury at some point, can he be prevented from testifying in his own behalf? What is a constitutional right? A couple of points. First of all, just on the first, where I was going, and even I think it's relevant to the second step of the analysis also, which is firearms rights like the right to vote, the right to serve on a jury, have historically been subject to forfeiture upon conviction. Now, that's different from some of the other rights that Your Honor was raising in your hypotheticals. So I do think the Second Amendment is different in that respect. Now, if you're talking specifically about the second step, for that very reason, while the analysis here, as this court adopted in Tyler's under intermediate scrutiny, it very well may not be intermediate scrutiny for some of those other rights that Your Honor is discussing. And then finally... Because that hasn't come up yet and the Supreme Court hasn't chosen. Well, because for many of those rights, it may not be the historical understanding of the right that it was subject to forfeiture. And so I think that's relevant for why this court adopted intermediate scrutiny at the second step of the analysis. And then finally, here we're dealing with an interest in avoiding domestic gun violence, which is clearly a compelling, extremely important interest. And there's a lot of statistics to show that this prohibition is tailored to serve that interest. And a lot of the examples Your Honor was raising, I'm not sure that you would have either of those, either the interest or the fit that we have here. All right, counsel, before you finish, you set your time talking about the Greeno two-step analysis. But in your brief, you also argue that this is an exception to the Second Amendment by the language of Heller, which says that longstanding regulations, certain ones that they list that are non-exhaustive, are not subject to the Second Amendment. And I noticed that our colleague, Gene Seiler, wrote the opinion United States versus White for the 11th Circuit, and also the First Circuit and I think of the 10th have followed him, while the 9th and the 4th, I guess, have gone the other way. But tell me, is it still your position that we should say that this is the Heller exception for the misdemeanor of domestic violence? Is that still your position, even though you didn't argue it today? Yes, I mean, I think when – I guess I think of the Heller exception as being contiguous with the first step of the Greeno analysis. In Heller, the court identified – I don't know. You know, historical and longstanding – Heller doesn't say what longstanding is. Actually, the examples they cite don't go back to the founding of the Constitution of the Bill of Rights. So, I mean, I'm thinking longstanding may only be 50, 60 years or something, and not necessarily 200 years. But tell me briefly why – if you still think we should follow our colleague's opinion, why we should do so. Sure, and I think the 11th Circuit's analysis in White is particularly instructive here. The Supreme Court did identify 922G1 as being a longstanding prohibition. That doesn't implicate the Second Amendment. This court found the same in Carey. And what the 11th Circuit said in White is that 922G9 is properly understood as an extension of 922G1 because what Congress was saying is that these crimes are just as serious as the felonies subject to G1, but for all the reasons we've already discussed, they end up with misdemeanor convictions. And that's why the 11th Circuit said that it falls within that same language of Heller and doesn't implicate the Second Amendment. Okay. Any further questions? Judge Boggs, Judge White. Thank you. Rebuttal. Thank you, Your Honors. I apologize to the court. My colleague is correct. It's a two-year window for felons definition under 18 U.S.C. 921-820, and I apologize to the court for that misstatement. Two things I want to address with regards to my colleague's argument is, first, if it was a serious crime at the time historically understood, and to try and make an extension today that a misdemeanor is an extension of felonies I think is improper. If my client was serious, committed an offense that was serious enough, they would have charged him with a felony. If the state can't prove that, they charge him with a misdemeanor. It's not considered a serious offense, at least not as serious as a felony today. And at the time of the Second Amendment ratification, it was never even a crime. So with regards to his statements that it should be an extension, I don't believe that that's the case. We have the distinction between the two for a very good reason, and the reason is that the state cannot prove the elements of a more egregious crime, which is traditionally what we consider a serious offense such as felonies. With regards to the statistics, I think I'd be remiss in not mentioning that there's a lot of statistics out there. But we have to remember this is a civil liberty that was granted to each and every one of us as citizens of this great country, and we should look at that with a careful eye. There's a quote in the syllabus of the Garner study I would draw the court's attention to, and I want to read it. And I quote, Policymakers are urged to use caution in interpreting the findings available to date. So the author of the Garner studies urges the policymakers to use caution in using these studies. Yet the government would have us and have this court rely on these studies, stripping a man from his fundamental individual liberties incorporated to him through the 14th Amendment, as determined by Heller and McDonald. At this time, Your Honor, I believe Mr. Stemmel's arguments hold merit, and I believe that the court should rule in our favor. And I thank you for the court's time. There's no further questions. Further questions? All right. Thank you, counsel. Thank you. All right. That concludes the case for this afternoon.